In the Matter of the Petition of COLLIER SERVICE CORPORATION and COLLIER ADVERTISING SERVICE, INC., Petitioners, *v.* Dr. JOHN P. BOLAND, and Others and PAUL M. HERZOG as Members of New York State Labor Relations Board, Respondents, for a Decree Modifying, Vacating and Setting Aside Certain Orders of Said New York State Labor Relations Board Made and Dated the 31st Day of January, 1938.

Supreme Court, Special Term, New York County, March 23, 1938.

*Spence, Windels, Walser & Hotchkiss* [*Nathaniel L. Goldstein, Paul Van Anda* and *Andre Maximov* of counsel], for the petitioners.

*Burton A. Zorn, General Counsel of the New York State Labor Relations Board* [*Bernard Jaffe* of counsel], for the respondent.

McLAUGHLIN (CHARLES B.), J. This is an application by petitioners, Collier Service Corporation and Collier Advertising Service, Inc., for an order modifying, vacating and setting aside a decision of the New York State Labor Relations Board, dated January 31, 1938, and the orders therein contained. The Labor Relations Board makes a cross-motion for a decree enforcing its order and requiring the petitioners to comply therewith.

It is important at the very outset to note the limited and circumscribed powers of the court to review the findings of the Labor Relations Board. Subdivision 2 of section 707 of the Labor Law (New York State Labor Relations Act as enacted by Laws of 1937, chap. 443) provides, in regard to an application by the Board for the enforcement of its orders, that " The findings of the Board as to the facts, if supported by evidence, shall be conclusive." Similarly, subdivision 4 of section 707, dealing with applications to modify or set aside a final order of the Board, provides that " The findings of the Board as to the facts shall in like manner be conclusive." The act is patterned closely upon and is substantially identical with the National Labor Relations Act (49 U. S. Stat. at Large, 449; U. S. Code, tit. 29, §§ 151–166), which contains a pro-

vision that " The findings of the Board as to the facts, if supported by evidence, shall be conclusive." (U. S. Code, tit. 26, § 160, subd. [e].) Construing the Federal act, the United States Supreme Court held that it was limited, in reviewing the findings of the National Labor Relations Board, to an inquiry as to whether there was substantial evidence to support the findings and that it could not review the facts. (*Washington, Virginia & Maryland Coach Co.* v. *National Labor Relations Board*, 301 U. S. 142.) The court said (p. 146): " The petition for certiorari made no mention of any claim with respect to the sufficiency of the evidence to support the findings. In the light of this fact the question is not open for decision here. But, were this not so, we should not review the facts, since § 10(e) of the act (29 U. S. C. A. § 160[c]) provides that ' the findings of the Board as to the facts, if supported by evidence, shall be conclusive,' and there was substantial evidence to support the findings." Although the powers of the court are more than perfunctory, they are not broad enough to authorize it to substitute its own judgment as to the facts and the inferences reasonably to be drawn therefrom for that of the administrative agency upon which the statute confers fact-finding powers. Whatever the views of the reviewing court may be as to the weight of the evidence, it must nevertheless accept as final the findings of fact made by the Labor Relations Board if there is substantial evidence to support them.

The decision of the Board, consisting of a preliminary statement, findings of fact, conclusions of law, and the Board's order, is twenty-one pages long. It is obviously impossible to do more here than refer to the gist of the decision. This, according to the brief submitted by the petitioners, is to be found in two of the Board's own sentences: " We find that at all times mentioned in these proceedings, before as well as after September 10, 1937, the day of the strike, the Respondents (the present petitioners) refused to bargain collectively in good faith with Local 906-B as the representative of Respondent's newsstand employees. We find further that the strike of Respondent's employees on September 10, 1937, and its continuation until the present time, has resulted directly from this failure and refusal by the Respondents to bargain collectively with Local 906-B."

The order of the Board which the petitioners seek to set aside directs them (1) to cease and desist from refusing to bargain collectively with the Retail Newsstand Employees Union, Local 906-B, as the exclusive representative of petitioners' newsstand agents and assistants, in respect to rates of pay, wages, hours of employment and other conditions of employment, (2) to open negotiations

with Local 906-B, and (3) to take back into their employ all employ-ees who went on strike on September 10, 1937, to the extent that available work is being performed by persons other than strikers, employed since September 9, 1937.

The court has carefully studied the minutes of the testimony before the Labor Relations Board and the exhibits offered in evidence at the hearings before the Board. Taking up first the period following the calling of the strike on September tenth, the court is of the opinion that the evidence amply justified a finding that the petitioners *after the calling of the strike* refused to bargain col-lectively with the representatives of Local 906-B which had been duly elected by the employees as their bargaining agent. Refusal to bargain collectively with the duly designated representatives of the employees is an " unfair labor practice." (Labor Law, § 704, subd. 6 as added by Laws of 1937, chap. 443.) The calling of the strike did not terminate the employers' obligation to bargain col-lectively with the employees' representatives. As the Board points out in its decision, the " duty of the employer to bargain collectively is intensified by the existence of a strike, since such bargaining pro-vides the best avenue for restoring peaceful and industrial relations. The failure to bargain at such a time, the adoption of an attitude that a strike constitutes ' a fight ' is most likely to result in height-ened industrial strife and unrest inimical to public safety, health and welfare and directly contrary to the purposes and policy of the act." In *Jeffery-DeWitt Insulator Co.* v. *National Labor Rela-tions Board* (91 F. [2d] 134; certiorari denied, 302 U. S. 731; 58 S. Ct. 55) the Circuit Court of Appeals pointed out that the mere existence of an impasse or of a strike does not in itself preclude the Labor Board from finding that a refusal to negotiate further is unreasonable and therefore an " unfair labor practice " (p. 139): " Whether the refusal to negotiate further in this case was unreason-able under the circumstances of the case and on that account an unfair labor practice, was a question of fact as to which we are bound by the finding of the Board, if it has substantial support in the evi-dence. * * * If an employer in the presence of a strike could rid himself of the obligation to negotiate by declaring further negoti-ations to be useless and refusing to recognize as employees those failing to return to work on his terms, the statute enjoining collective bargaining would largely. fail of its purpose. We do not think that it can be brushed aside so easily."

The finding that the petitioners *prior to the calling of the strike* on September 10, 1937, refused to bargain collectively in good faith with Local 906-B as the representative of their newsstand employees, is also supported by the evidence. It may be that this evidence is not as strong as that adduced concerning the actions of the

petitioners after the calling of the strike. The test, under the statute, is, however, only whether there is substantial evidence to support the Board's findings. The court is of the opinion that substantial evidence to support the Board's findings relating to the period prior to the calling of the strike does exist. It is impracticable to review the evidence in detail. Suffice it to point out that when the protracted negotiations between the petitioners and the union had reached a point where agreement seemed likely, various changes were proposed by attorneys for the petitioners and the proposed agreement submitted by said attorneys, instead of being presented for final action and signature, in the event that its provisions were acceptable to the union, was submitted only as " constituting a basis of negotiations looking toward the consummation of the final agreement " with a statement that until Mr. Collier, petitioners' president, arrived from Europe, " it will be impossible to consummate an agreement either in the form herewith enclosed or in any other form." Up to that time agents of the petitioners had been in telephonic communication with Mr. Collier in Europe, and had received his approval of various concessions made to the union from time to time. The sudden insistence upon Mr. Collier's physical presence in this city before any agreement could be made, despite the fact that his approval of the latest changes in the proposed agreement could have been obtained by telephone or wireless in the same manner as his approval to previous changes had been secured, lends considerable support to the finding of the Board that the petitioners' efforts in the direction of collective bargaining were not undertaken in good faith. There is also evidence tending to support the finding of the Board that the doubt as to the good faith of the petitioners was heightened by the fact that after Mr. Collier's return he did not seek to negotiate with the local but instead issued a circular to the individual employees stating the petitioners' position and containing proposals to said employees, thus appealing directly to the employees over the heads of their designated bargaining representatives.

Having come to the conclusion that there is substantial evidence to support the findings of the Labor Relations Board that prior to as well as after the calling of the strike the petitioners were guilty of unfair labor practices, the propriety of the provisions of the order directing reinstatement of employees who were in the petitioners' employ at the time the strike was called, cannot be sucessfully questioned. (See Labor Law, § 706, subd. 3.)

The motion to modify or set aside the decision of the Board and the orders therein contained is denied, and the cross-motion to enforce the order of the Board is granted.

Settle order.